FILED

JUN 1 1 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

TWO-WAY MEDIA LLC,
    Plaintiff

v.

AT&T INC., ET AL.,
    Defendants

§
§
§
§
§
§
§
§
§

Civil No. CC-8-116

**SA09CA0476 0G**

## JUDGEMENT OF TRANSFER

In accordance with this Court's order granting the AT&T Defendants' motion to

transfer, the Court TRANSFERS this case to the United States District Court for the Western

District of Texas, San Antonio Division, pursuant to 28 U.S.C. §1404(a).

ORDERED this _____ day of _____, 2009.

_____
HAYDEN HEAD
CHIEF JUDGE

1

TRUE COPY I CERTIFY
ATTEST: 6-9-09
MICHAEL N. MILBY, Clerk of Court

By _____
Deputy Clerk

191

# UNITED STATES DISTRICT COURT
## IN THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **TWO-WAY MEDIA LLC,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil No. CC-8-116** |
| | § | |
| **AT&T INC., ET AL.,** | § | **S A 0 9 C A 0 4 7 6 OG** |
| **Defendants** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO TRANSFER VENUE

This is a patent infringement case.  Plaintiff Two-Way Media LLC ("TWM") sues AT&T Inc. and its subsidiary corporations ("the AT&T Defendants")[1] for infringing U.S. Patent Nos. 5,778,187 (the "187 Patent"), 5,983,005 (the "005 Patent"), 6,434,622 B1 (the "622 Patent"), 7,080,153 (the "153 Patent"), and 7,266,686 (the "686 Patent").  The AT&T Defendants move to transfer venue of this case to the United States District Court for the Western District of Texas, San Antonio Division[2], pursuant to 28 U.S.C. §1404(a).  For the reasons discussed below, the motion is GRANTED.

---

[1] AT&T Corp., AT&T Operations, Inc., AT&T Services, Inc., SBC Internet Services, Inc. d/b/a AT&T Entertainment Services, AT&T Internet Services, Pacific Bell Internet Services, and Southwestern Bell Telephone Company.

[2] In the alternative, the AT&T Defendants move to transfer venue of this case to the Austin Division of the Western District of Texas.

1

TRUE COPY I CERTIFY
ATTEST: 6-9-09
MICHAEL N. MILBY, Clerk of Court

By _____
Deputy Clerk

190

# I.   BACKGROUND

TWM owns five patents[3] related to live streaming technology that is used for broadcasting audio and video over the Internet.  On April 11, 2008, TWM filed suit in this Court against Akamai Technologies, Inc. ("Akamai"), Limelight Networks, Inc. ("Limelight"), and the AT&T Defendants for infringing those patents.  TWM has since settled with Akamai and Limelight, which are no longer parties to this lawsuit.  The only defendants remaining in this case are the AT&T Defendants.  TWM contends the AT&T Defendants provide a service called "U-verse" that infringes its patents.

On February 27, 2009, the AT&T Defendants filed a motion to transfer venue of this case in the Corpus Christi Division of the Southern District of Texas to the San Antonio Division of the Western District of Texas.  They argue San Antonio is a clearly more convenient forum than Corpus Christi because the U-verse business is based in and managed from San Antonio, and the majority of their key witnesses live in either San Antonio or Austin.  The AT&T Defendants also contend this lawsuit has no meaningful connection to the Corpus Christi Division because none of the parties, potential witnesses, or relevant evidence is located in the Corpus Christi Division, and U-verse is not sold in the Corpus Christi Division.

TWM opposes transfer arguing it would not be in the interest of justice.  Citing to *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997), TWM argues

---

[3] TWM's five patents are U.S. Patent Nos. 5,778,187 (the "187 Patent"), 5,983,005 (the "005 Patent"), 6,434,622 B1 (the "622 Patent"), 7,080,153 (the "153 Patent"), and 7,266,686 (the "686 Patent").

judicial economy favors keeping this case in Corpus Christi. TWM contends this Court has already invested substantial time and resources becoming familiar with the technology at issue in this case. Specifically, from 2004 to 2007, this Court presided over a case that involved three of the five patents that are now at issue in this case. *See Two-Way Media, LLC v. America Online, Inc.*, Civil Action No. 2:04-89. TWM argues transferring this case to San Antonio would create a delay and waste judicial resources.

## II.    APPLICABLE LAW

Title 28 U.S.C. §1404(a) applies to change of venue in patent cases. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought." 28 U.S.C. §1404(a). In reviewing a district court's decision regarding a motion to transfer venue under §1404(a), the Federal Circuit Court of Appeals applies the law of the regional circuit in which the district court sits. *In re TS Tech USA Corp.*, 551 F.3d at 1319 (citing *Storage Technology Corp. v. Cisco Systems, Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003)).

In the Fifth Circuit, district courts have broad discretion in deciding whether to order a transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 311, 315 (5th Cir. 2008) (citing *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)). The preliminary question that a district court must answer in ruling on such a motion is whether the civil action "might have been brought" in the destination venue. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't.*, 337 F.3d 429, 432 (5th Cir.) cert. denied, 540 U.S.

1049, 124 S.Ct. 826, 157 L.Ed.2d 698 (2003)).  If so, a district court must then determine whether "the convenience of the parties and witnesses, in the interest of justice" requires transfer. *In re Volkswagen AG*, 371 F.3d at 203.

Under Fifth Circuit law, a party moving to transfer a case under §1404(a) must show "good cause." *In re Volkswagen of America, Inc.*, 545 F.3d at 315.  To show good cause means that a moving party, in order to support its claim for a transfer "...must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of the parties and witnesses, in the interest of justice.'" *Id.* When the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice of forum should be respected. *Id.* However, when the movant demonstrates that the transferee venue is clearly more convenient, it has shown good cause and the district court should grant the transfer. *Id.*

The Fifth Circuit Court of Appeals has adopted the private and public factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), as appropriate for determining whether a §1404(a) transfer is for the convenience of parties and witnesses and in the interest of justice. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).  However, the *Gilbert* factors are not necessarily exhaustive or exclusive, and none " ... can be said to be of dispositive weight." *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).  The plaintiff's choice of venue is not a distinct factor in the §1404(a) analysis. *In re TS Tech USA Corp.*, 551 F.3d at 1320 (citing *In re Volkswagen of America, Inc.*, 545 F.3d at 314 ("[T]his 'good cause' burden reflects the appropriate

4

deference to which the plaintiff's choice of venue is entitled.")).

The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d at 315. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

### III.   ANALYSIS

The parties agree that this action could have originally been brought in the San Antonio Division of the Western District of Texas. The Court agrees. *See* 28 U.S.C. §1391. Therefore, the Court must now determine whether "the convenience of the parties and witnesses, in the interest of justice" requires transfer. To do so, the Court will first analyze each *Gilbert* factor and then address how transfer of this case will affect judicial economy.

### A.   THE *GILBERT* FACTORS

### 1. Private Interest Factors

### a.   The relative ease of access to sources of proof

The AT&T Defendants argue this factor favors transfer because they have produced over 1,000,000 pages of documents, which in large part are stored on individual hard drives in San Antonio and Austin. They also contend there is no evidence located in the Corpus

Christi Division. TWM argues this factor is neutral because all of the documentary evidence has been stored electronically, and therefore can be accessed just as easily from Corpus Christi as from San Antonio. TWM also contends relevant documents were collected from sources that are located throughout the United States.

The parties agree, and this Court acknowledges that advances in technology have lessened the burden of exchanging documents. However, in *In re Volkswagen of America, Inc.*, 545 F.3d 311, 315 (5th Cir. 2008), the Fifth Circuit explicitly rejected the argument that such advances make this factor obsolete. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *In re Volkswagen of America, Inc.*, 545 F.3d at 316.

The only evidence identified in this case is documentary. Neither party has identified any physical non-documentary evidence related to this case. It is undisputed that all of the documents which have been produced in this case have been produced and managed electronically. Paula Phillips, Litigation Manager with AT&T Services, Inc. in Bedminster, New Jersey, has been involved in collecting documents for production in this lawsuit. In her sworn declaration, she states:

> To date, the AT&T Defendants have produced more than 1,000,000 pages of documents in response to Plaintiff's request for production. Some of these documents were collected from the personal hard drives of individuals who have worked in the U-verse business in San Antonio, Texas, and Austin, Texas.

> None of the documents that were collected or produced in this lawsuit are located in or within 100 miles of Corpus Christi.

In her sworn deposition, Phillips explains that all of the hard drive data was collected remotely from Bedminster, New Jersey using a tool called "EnCase." After the data was collected, search criteria was applied to the data in order to determine what documents were responsive to TWM's discovery requests. This "culling" process was also done from Bedminster, New Jersey. Phillips also testified that a web-based repository exists which contains all of the documents produced in this case. The repository is accessible by specific persons via the Internet.

TWM has produced documents from Jim Butterworth's files located in Boulder, Colorado, and in her sworn declaration, Rachel S. Black, counsel for TWM, explains that "[s]ince 2004, almost all of the TWM production has been located in Houston at the offices of TWM's counsel." Attached to Black's declaration is a copy of the AT&T Defendants' Document Production Index, which is annotated with her handwritten notes "to reflect information [she] learned during the 30(b)(6) witness of AT&T on March 19, 2009, concerning the nature and source of the documents produced." The Index itself shows that the AT&T Defendants produced documents from hard drives located in Livonia, Michigan, Waukesha, Wisconsin, San Antonio, Texas, Austin, Texas, and Dallas Texas.

The Court finds this factor favors transfer. The relative ease of access to proof will be increased by transferring this case to San Antonio. The Court acknowledges that the documentary evidence in this case originated from several sources that are located throughout the country. However, it is undisputed that none of the documentary evidence originated or now exists in the Corpus Christi Division. On the other hand, it is undisputed

that a large number of documents were collected from the personal hard drives of individuals who worked for the U-verse business in San Antonio and Austin.  As such, transfer to San Antonio would certainly make access to this evidence easier for the AT&T Defendants. Because all of the evidence is stored electronically and may be accessed remotely via the Internet, the burden of exchanging documents that is imposed on TWM will not be increased or decreased if this case is transferred to San Antonio.

**b.    The availability of compulsory process to secure the attendance of witnesses**

The AT&T Defendants argue in their pleadings[4] that this factor favors transfer because "at least five important witnesses" are within the subpoena power of the San Antonio court but not within the subpoena power of this Court.  TWM contends this factor is neutral because neither venue enjoys absolute subpoena power over all of the witnesses in this case.

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas is civil cases. *See* FED. R. CIV. P. 45.  Subject to certain limitations, a subpoena may be served at any place: (A) within the district of the issuing court; (B) outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection..."  FED. R. CIV. P. 45(b)(2).  Rule 45(c)(3)(A)(ii) provides, "[O]n timely motion, the issuing court must quash or modify a subpoena that ... requires a person who is neither a party nor a party's officer to travel more than 100 miles from where the person resides, is employed, or regularly

---

[4] The AT&T Defendants did not advance this argument at oral argument on March 25, 2009.  In fact, the Power Point presentation they presented at oral argument presents this factor as being neutral.

transacts business in person ...” FED. R. CIV. P. 45(c)(3)(A)(ii).

In *In re Volkswagen of America, Inc.*, an injured motorist and passenger sued Volkswagen AG and Volkswagen of America, Inc. (“Volkswagen”), alleging that design defects in their vehicle led to the injuries they suffered in a collision that occurred in Dallas, Texas. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 307 (5th Cir. 2008). The lawsuit was filed in the Eastern District of Texas, Marshall Division. It was undisputed that: (1) the accident occurred in Dallas, (2) Dallas residents witnessed the accident, (3) Dallas police and paramedics responded and took action, (4) a Dallas doctor performed an autopsy, (5) a third-party defendant lived in Dallas County, Texas, (6) none of the plaintiffs lived in the Marshall Division, (7) no known party or non-party witness lived in the Marshall Division, (8) no known source of proof was located in the Marshall Division, and (9) none of the facts giving rise to this suit occurred in the Marshall Division. *Id.* at 316.

Volkswagen filed a motion to transfer venue to the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §1404(a). *Id.* at 307. The district court denied the transfer motion. *Id.* at 308. On review of a petition for a writ of mandamus, the Fifth Circuit found the district court erred in applying several *Gilbert* factors, including the availability of compulsory process to secure the attendance of witnesses. *Id.* at 316. The district court had found this factor was neutral because, despite its lack of absolute subpoena power, it could deny any motion to quash and ultimately compel the attendance of third-party witnesses found in Texas. *Id.* The Fifth Circuit found the district court erred in applying this factor:

9

As in *In re Volkswagen I*, the non-party witnesses located in the city where the collision occurred "are outside the Eastern District's subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii)," and any "trial subpoenas for these witnesses would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)." *Id.* at 205 n. 4.  Moreover, a proper <u>venue that does enjoy absolute subpoena power</u> for both depositions and trial – the Dallas Division – <u>is available</u>.  As we noted above, the venue transfer analysis is concerned with convenience, and that a district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses.  Thus, the district court erred in applying this factor because it also weighs in favor of transfer. *Id.* at 316-17.

In *In re TS Tech USA Corp.*, Lear Corporation filed a patent infringement action against TS Tech USA Corporation, TS Tech North America, Inc. and TS Tech Canada, Inc. ("TS Tech") in the District Court for the Eastern District of Texas. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).  TS Tech filed a motion to transfer venue to the Southern District of Ohio, pursuant to §1404(a). *Id.*  TS Tech argued the Southern District of Ohio was a more convenient venue to try the case because the physical and documentary evidence was mainly located in Ohio and the key witnesses all lived in Ohio, Michigan, and Canada. *Id.*  TS Tech further argued that because none of the parties were incorporated in Texas or had offices in the Eastern District of Texas, there was no meaningful connection between the venue and the case. *Id.*  The district court denied transfer. *Id.*  In reaching that decision, the district court found the availability of compulsory process factor was neutral "because the parties had failed to identify any unwilling witness outside of this Court's subpoena power, and the parties agreed to this fact." *MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627 (E.D. Tex. 2009) (citing *In re TS Tech USA Corp.*, 551 F.3d at 1319).  On review of a petition for a writ of mandamus, the Federal Circuit Court of Appeals found the

district court erred in denying transfer.  However, in reaching that conclusion, the Federal Circuit found the district court "was correct in giving no weight to the availability of compulsory process factor..." *In re TS Tech USA Corp*, 551 F.3d at 1320.

This case is distinguishable from *In re Volkswagen of America, Inc.* and *In re TS Tech USA Corp*.  Here, neither venue enjoys absolute subpoena power over all witnesses in this case.  The AT&T Defendants have designated six witnesses, five of whom live in either San Antonio or Austin.  They are all AT&T employees and therefore "party" witnesses.  It is uncontested that these five witnesses are within the subpoena power of the San Antonio court.  However, TWM has identified several potential "non-party" witnesses who are located in New Jersey and New York and therefore not located within the subpoena power of either this Court or the San Antonio court.  Furthermore, although there are no witnesses located within the subpoena power of this Court, neither party has identified any witnesses who are willing to appear before this Court.  As such, the Court finds this factor is neutral.

### c.    The cost of attendance for willing witnesses

The AT&T Defendants argue this factor favors transfer because the majority of its key witnesses live in or near San Antonio while no witnesses live in the Corpus Christi Division.  In response, TWM argues the cost of attendance for <u>all</u> willing witnesses will not be lower if the case is tried in San Antonio.  Citing to *MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627 (E.D. Tex., 2009), TWM contends "[t]his is not a case where all of the witnesses are concentrated in one part of the country, close to the forum where transfer is sought." *MHL Tek, LLC*, 2009 WL 440627 at *4.  TWM also argues the convenience of non-party witnesses

11

should be accorded more weight than the convenience of party witnesses.

The Fifth Circuit has adopted a "100 mile" rule, which provides "[W]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of America, Inc.*, 545 F.3d at 317 (citing *In re Volkwagen I*, 371 F.3d 201, 204-05 (5th Cir. 2004)). "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which fact witnesses must be away from their regular employment." *Id.* The Fifth Circuit also recognizes that witnesses may suffer personal costs associated with being away from family and community. *Id.*

Here, the AT&T Defendants have designated six witnesses they expect to call at trial.[5] All of the witnesses are AT&T employees, five of which live in either San Antonio or Austin. The other witness lives in Dallas. Specifically, Matthew Wallace, a manager of the Local Network Operations business unit for AT&T Services, Inc., lives and works in San Antonio. Since 2003, he has been involved in supervising the design, development, integration, testing, commercial introduction, and marketing of U-verse. In his sworn declaration, Wallace states:

---

[5] At oral argument on March 25, 2009, Bryant Boren, counsel for the AT&T Defendants, told this Court, "I would anticipate that all or most of those witnesses would be called at the trial in this case. Since Mr. Nadarajah and Mr. Winburn have not yet testified, I can't tell the Court whether they will or will not be called as witnesses."

Because of personal and family commitments, it would be much more convenient and less burdensome for me to attend trial in San Antonio than in Corpus Christi. In order to attend trial in Corpus Christi, I would have to spend several nights away from home and would have to be absent from work, family, and community activities in San Antonio.

Jeff Weber, who is also in senior management for U-verse, lives and works in San Antonio as well. Christopher Chase and David Deas, both of whom live and work in Austin, have technical knowledge on how the U-verse service operates. Dinesh Nadarajah, who lives in Austin, and Kenneth Winburn, who lives in Dallas, are also technical witnesses; however, they have not yet been deposed.

In her sworn declaration, Rachel Black, counsel for TWM, identifies several "potential nonparty or AT&T witnesses with discoverable information" who are located throughout the United States. Co-inventor Antonio Monteiro lives in Floram Park, New Jersey. William Crawford and Bradley Burde, co-founders of Netcast Communication Corp., TWM's predecessor-in-interest, live in Katonah and Crawford, New York. Ernie Carey, Senior Vice President at AT&T, lives in Dallas, Texas. Hestia Lei, Executive Director, U-verse Member Marketing & Programmer Management at AT&T, lives in Los Angeles, California. Kieran Nolan, Vice President at AT&T, lives in Los Angeles, California. Jim Butterworth, TWM's president and principal owner, lives in Boulder, Colorado. TWM's potential expert witnesses are located in Santa Barbara, Houston, Massachusetts, Chicago, and Philadelphia.

13

The U.S. District Court in San Antonio is approximately 143 miles from the U.S. District Court in Corpus Christi.[6] All of the witnesses the AT&T Defendants anticipate calling at trial live in San Antonio, Austin, or Dallas. It is approximately 138 miles farther from Austin to Corpus Christi than it is from Austin to San Antonio. The same is true for Dallas. It is undisputed that there are no potential witnesses, including those identified by TWM, that are living in or within 100 miles of Corpus Christi. While this Court acknowledges the witnesses are decentralized, TWM does not claim, and there is no evidence that any of TWM's potential out-of-state witnesses would find traveling to or attending trial in Corpus Christi less expensive or more convenient than traveling to or attending trial in San Antonio. Put another way, attending trial in San Antonio would not be more inconvenient than attending trial in Corpus Christi. In fact, the Court's own experience and preliminary independent online research suggest to the contrary. According to www.orbitz.com, at least one major commercial airline[7] provides a non-stop flight from Newark, New Jersey, Los Angeles, California, Denver, Colorado, Chicago, Illinois, Dallas, Texas, and Houston, Texas to San Antonio, Texas. With the exception of Dallas[8] and Houston, there are no non-stop

---

[6] This Court has discretion to take judicial notice of matters of geography, including distances between cities. FED. R. EVID. 201(c); *Williams v. U.S.*, 359 F2d 67 (5th Cir. 1966) (citing *Weaver v. U.S.*, 298 F.2d 496 (5th Cir. 1962)); *Hanes Supply Co. v. Valley Evaporating Co.*, 261 F.2d 29, 33 (1958).

[7] The commercial airlines featured on www.orbitz.com that serve the destinations at issue in this case are Continental Airlines, United Airlines, Frontier Airlines, American Airlines, US Airways, Delta Air Lines, Northwest Airlines, Alaska Airlines, AirTran Airways, and Midwest Airlines.

[8] American Airlines provides a direct flight from Dallas, Texas, to Corpus Christi, Texas, via American Eagle.

flights available from these cities to Corpus Christi, Texas. As such, it is clear to this Court

that all of the witnesses who may be called to testify in this case would incur more monetary

and personal costs if this case were tried in Corpus Christi as opposed to San Antonio.

Moreover, both parties would incur a greater loss of productivity by having their employees

spend more time traveling to Corpus Christi than San Antonio. No evidence or argument has

been presented to the contrary. In fact, at oral argument on March 25, 2009, in discussing

the *Gilbert* factors with the Court, Parker Folse, counsel for TWM said,

> --with respect of convenience factors, ***our perspective on it is that they are all***
> ***neutral, except for one, which is a slight checkmark in favor of convenience***
> ***of party witnesses***. And I'm going to show the Court cases which say that
> when 1404(a) talks about the convenience of the witnesses, it is really not
> talking about party witnesses, because they're under the control of the parties.
> They'll show up regardless. What it's really talking about is convenience to
> non-party witnesses, and whether or not there are non-party witnesses who are
> in the subpoena power of one court, but not in the subpoena power of another.

TWM cites to the following district court opinions in support of its argument that the

convenience of the non-party witnesses should be accorded the greatest weight: *Ternium*

*International U.S.A. Corp. v. Consolidated Systems, Inc.*, 2009 WL 464953 (N.D. Tex.,

2009); and *AT&T Intellectual Property I, LP v. Airbiquity Inc.*, 2009 WL 774350 (N.D. Tex.,

2009).

In *Ternium*, Ternium International U.S.A. Corporation, a Delaware corporation whose

only place of business was in Houston, Texas, filed a breach of contract against Consolidated

Systems, Inc. ("CSI"), a South Carolina corporation, in the U.S. District Court for the

Northern District of Texas. *Ternium International U.S.A. Corp. v. Consolidated Systems,*

*Inc.*, 2009 WL 464953 at *1 (N.D. Tex., 2009). CSI filed a §1404(a) motion to transfer the

case to the District of South Carolina. *Id.* CSI identified six party witnesses, all of whom

lived in South Carolina, and four non-party witnesses who lived in South Carolina, Alabama,

Georgia, and Mississippi. *Id.* at *4. The plaintiff identified four party witnesses, all of whom

lived in Houston, Texas. *Id.* In considering the cost of attendance for willing witnesses,

Senior District Judge A. Joe Fish cited two of his previous opinions[9] to support the following

holding:

> The convenience of the witnesses is often regarded as the most important
> factor to be considered in deciding whether to transfer venue. However, it is
> the convenience of the non-party witnesses that is accorded the greatest
> weight. The convenience of witnesses who are employees of the party seeking
> transfer is entitled to less weight because that party will be able to compel their
> testimony at trial. *Id.*

Judge Fish concluded the cost of attendance for willing witnesses weighed slightly in

favor of transfer. *Id.* Specifically, he found the cost of attendance for the party witnesses

was neutral because each party would incur additional expense in transporting its witnesses

to the other state. *Id.* He also found the costs of attendance for the three non-party witnesses

living in Alabama, Mississippi, and Georgia would be similar whether they testified in South

Carolina or Texas. *Id.* Lastly, Judge Fish found the cost of attendance for the remaining

non-party witnesses living in South Carolina was the only issue to be considered. *Id.* Judge

Fish found the cost of attendance for the non-party witness to attend trial in his home state

would be less than traveling to Texas. *Id.*

---

[9] *See Minka Lighting, Inc. v. Trans Glove Imports, Inc.*, 2003 WL 21251684 (N.D. Tex.,
2003); *Frost v. ReliOn, Inc., 2007 WL* 670550 (N.D. Tex., 2007).

16

In *Airbiquity,* the plaintiff AT&T Intellectual Property I, LP, a Nevada limited partnership, and AT&T Mobility II, LLC, a Delaware corporation, filed a patent infringement suit against Airbiquity, Inc. in the U.S. District Court for the Northen District of Texas. *AT&T Intellectual Property I, LP v. Airbiquity Inc.,* 2009 WL 774350 at *1 (N.D. Tex., 2009). Airbiquity, Inc. filed a §1404(a) motion to transfer venue of the case to the Western District of Washington. *Id.* Airbiquity, Inc. identified nine party witnesses and three non-party witnesses, all of whom lived in the State of Washington. *Id.* at *3. AT&T identified six party witnesses, two of whom lived in Texas. *Id.* AT&T's remaining party witnesses lived in Illinois and Georgia. *Id.* AT&T also identified five non-party witnesses, who lived in Illinois, Georgia, and Maryland. *Id.*

In considering the cost of attendance for willing witnesses, District Judge Barbara M.G. Lynn cited to *Sargent v. Sun Trust Bank, N.A.,* 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004), which held "[t]he convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue. However, it is the convenience of the nonparty witnesses is accorded the greatest weight." *Id.* at *5. Judge Lynn concluded the Western District of Washington would not be substantially more convenient for <u>all</u> of the willing witnesses because "...regardless of whether the case is tried in Dallas or Seattle, there will be several willing witnesses outside the "100-mile" rule established in *Volkswagen.*" *Id.* In reaching her decision, Judge Lynn compared the relative convenience for each party's witnesses. *Id.* She found that while transfer would have been more convenient for all of Airbiquity, Inc.'s witnesses, that convenience was offset by the

17

inconvenience to the AT&T's non-party witnesses who lived in Illinois, Georgia, and Maryland. *Id.* While Airbiquity, Inc.'s three non-party witnesses lived in or near Seattle, AT&T had identified five non-party witnesses who lived near Chicago, Atlanta, and Washington D.C., all of which were, in terms of mileage, closer to Dallas than Seattle. *Id.*

Not only is this Court is not bound by the law pronounced by its sister courts, but the factual circumstances in *Ternium* and *Airbiquity* are distinguishable from the facts in this case. In *Ternium* and *Airbiquity*, each forum was more convenient to a number of witnesses. In this case, San Antonio is more convenient to <u>all</u> witnesses. All of the potential witnesses in this case, both party and non-party, live closer to San Antonio than Corpus Christi. Moreover, Judges Fish and Lynn clearly considered the burdens on <u>both types of witnesses</u> in analyzing this factor. Neither judge held or implied that the convenience to party witnesses is no longer relevant to the venue analysis. More important, neither the Fifth Circuit nor the Federal Circuit has adopted or commented on this distinction. In *In re Volkswagen of America, Inc.*, the Fifth Circuit considered the cost of attendance for <u>all</u> willing witnesses, which in that case, included the plaintiffs, a third-party defendant, accident witnesses and investigators, treating medical personnel, and a medical examiner. *In re Volkswagen of America, Inc.*, 545 F.3d at 317-318. In *TS Tech*, the Federal Circuit considered the costs of attendance for the "key" witnesses and made no distinction between party and non-party witnesses. *In re TS Tech USA Corporation*, 551 F.3d at 1318.

The Court finds this factor weighs heavily in favor of transfer.

### d.  All other practical problems that make trial of a case easy, expeditious and inexpensive

The Court finds this factor is neutral.  In their pleadings, the AT&T Defendants state, "[T]he remaining Gilbert factors are all at least neutral.  None favors Corpus Christi and some may weigh in favor of San Antonio."  Furthermore, in their Power Point presentation presented at oral argument on March 25, 2009, the AT&T Defendants state that the "[R]emaining Gilbert factors" are neutral.  In its response brief, TWM argues this factor favors Corpus Christi; however, at oral argument, Parker Folse, counsel for TWM stated, " – with respect of convenience factors, our perspective on it is that <u>they are all neutral, except for one</u>, which is a slight checkmark in favor of convenience of party witnesses."

### 2.    Public Interest Factors

### a.    The administrative difficulties flowing from court congestion

The Court finds this factor is neutral.  In their pleadings, the AT&T Defendants state, "[T]he remaining Gilbert factors are all at least neutral.  None favors Corpus Christi and some may weigh in favor of San Antonio."  In their Power Point presentation presented at oral argument on March 25, 2009, the AT&T Defendants state that the "[R]emaining Gilbert factors" are neutral.  In its response brief, TWM argues this factor "does not weigh in favor of a transfer" and "is at best a neutral factor."  Again, at oral argument, Parker Folse, counsel for TWM stated, " – with respect of convenience factors, our perspective on it is that <u>they are all neutral, except for one</u>, which is a slight checkmark in favor of convenience of party witnesses."

### b.   The local interest in having localized interests decided at home

The Supreme Court has determined that "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Co. v. Gilbert*, 330 U.S. 501 (1947). "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach ..." *Id.*  The Fifth Circuit also acknowledges this concern is relevant to the §1404(a) analysis. *See Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963).

In this case, apart from this Court's having presided over the *AOL* litigation, there is no relevant factual connection between the actions giving rise to this suit and the Corpus Christi Division.  It is undisputed that there are no evidence, parties, or witnesses located in the Corpus Christi Division.  It is undisputed that there have not been and there are currently no U-verse business activities taking place in the Corpus Christi Division, and that the alleged infringing product, U-verse, is not sold within the Corpus Christi Division.

On the other hand, AT&T's U-verse business is based in San Antonio.  In his sworn declaration, Matthew Wallace, Executive Director for Advanced Access Technologies by AT&T Services, Inc., states:

> [T]he business operations of U-verse are based in San Antonio, Texas.  The senior management for U-verse is based in San Antonio.  The teams responsible for managing the U-verse business and for financial analysis and reporting related to U-verse are also located in San Antonio.  Approximately 85 employees in San Antonio have some involvement in the U-verse project.
>
> Testing and integration of U-verse was performed at AT&T Laboratories' facilities in Austin, Texas.  The team that conducted the testing and integration of U-verse in Austin includes approximately 45 people who are based in

20

Austin.

No work pertaining to the design, development, testing, integration, or commercial introduction of U-verse occurred in Corpus Christi, Texas.  No management activities, financial analysis or financial reporting for the U-verse business have taken place in Corpus Christi, Texas.  U-verse is not available in Corpus Christi.

TWM contends the residents of Corpus Christi have an equal interest in deciding this case because U-verse is currently being sold to residents living within the Southern District of Texas, specifically, Brazoria, Fort Bend, Galveston, Harris, and Montgomery counties, none of which are part of the Corpus Christi Division.  TWM also avers the AT&T Defendants are "taking steps toward rolling out the infringing U-verse service to residents of Corpus Christi."

The Court is not persuaded by TWM's argument.  It is undisputed that U-verse has never been and is currently not being sold in the Corpus Christi Division.  The mere possibility that U-verse may be sold in Corpus Christi in the future is not relevant to the Court's venue analysis.  Moreover, in *TS Tech*, the Federal Circuit held the mere sale of an accused infringing product within the plaintiff's chosen venue provides no reason to prefer that venue over other locations in which the product is also available.  *In re TS Tech*, 551 F.3d at 1321.  It is undisputed that U-verse is sold in San Antonio.  Therefore, the fact that U-verse is sold in other divisions within the Southern District of Texas is no reason for this Court keep this case in the Corpus Christi Division.

The Court finds the residents of San Antonio have a greater localized interest in deciding whether AT&T infringed TWM's patents than the residents of the Corpus Christi

21

Division. San Antonio residents are affected by AT&T's U-verse business being based in San Antonio because they receive the economic and intellectual benefits from its development and presence. There is nothing in the record to indicate the residents of the Corpus Christi Division receive any such benefit. As such, jurors of the Corpus Christi Division should not be burdened with hearing disputes arising from the patents at issue which undisputedly have no relation to their community.

The Court finds this factor weighs heavily in favor of transfer.

### c.   The familiarity of the forum with the law that will govern the case

The parties agree, and the Court finds this factor is neutral. Because all of the claims in this lawsuit arise under federal patent law, all federal courts are equally prepared to apply the law in this case. *In re TS Tech*, 551 F.3d at 1320.

### d.   The avoidance of unnecessary problems of conflict of laws or in the application of foreign law

The parties agree, and the Court finds this factor is neutral.

## B.   JUDICIAL ECONOMY

TWM argues transferring this case would not serve judicial economy. TWM maintains this Court is already familiar with three of the five patents involved in this case. If this case is transferred, TWM claims it will have to spend unnecessary time, money, and resources to educate a new judge. At oral argument on March 25, 2009, the following exchange took place between the Court and Parker Folse, counsel for TWM:

**The Court:**  You wouldn't care if it –

**Mr. Folse:**  – it's –

**The Court:**  – was San Antonio if I was there.  Just like he [Bryant Boren] wouldn't care if it was San Antonio cause I wasn't there.

**Mr. Folse:**  The fact of the matter is, Judge, that you are here.  The fact of the matter is you did spend a tremendous amount of time in the *AOL* case.

**The Court:**  You're avoiding what I'm saying.  You wouldn't care if I was there.

**Mr. Folse:**  I would care because we have people in Corpus Christi that we have worked with that we like, that we have gotten used to working with, that we will probably have to replace if we go to San Antonio.

**The Court:**  A convenience of the lawyers does not matter.

**Mr. Folse:**  But beyond that, you were right.  If you told us that you would preside over this case and try it from a courtroom in San Antonio, then I wouldn't have much else to say.

—

**The Court:**  The point of this case is that there is none in Corpus Christi.  None.  There is not one Gilbert factor in the column in Corpus Christi.

**Mr. Folse:**  Except for you.

The AT&T Defendants contend this case is different than the *AOL* litigation because it involves two new patents, a different defendant, a different product, and different technology.  The AT&T Defendants also contend this Court has not yet engaged in any claim construction activity or otherwise familiarized itself with the underlying technology at issue

23

in this case.

The Court acknowledges the *Gilbert* factors are not necessarily dispositive in all cases. *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). TWM cites to *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997), in which the Federal Circuit found judicial economy to be dispositive on a §1404(a) motion to transfer. In *Eli Lilly*, the Regents of the University of California ("UC") sued Eli Lilly and Company ("Eli Lilly") for patent infringement in the U.S. District Court for the Northern District of California. *Eli Lilly & Co.*, 119 F.3d at 1562. The lawsuit was filed in 1990. *Id.* Two years later, the Judicial Panel on Multidistrict Litigation consolidated the case with five other related cases for pre-trial proceedings in the U.S. District Court for the Southern District of Indiana. *Id.* at 1563. In 1994, pursuant to §1404(a), Eli Lilly moved to transfer venue for <u>trial on the merits</u> to the Indiana court. *Id.* The Indiana court granted the motion and heard the case. *Id.*

On appeal, UC argued the Indiana court abused its discretion in granting the motion to transfer because it afforded too much weight to the element of judicial economy. *Id.* at 1565. The Federal Circuit found no abuse of discretion and explained, "The Indiana court based its decision to retain the case for trial on the merits on its finding that, although the convenience of the parties and witnesses did not favor either the Indiana or the California court, the interests of judicial economy would be served by trial in the Indiana court." *Id.*

24

The Federal Circuit held:

> [C]onsideration of the interest of justice, which includes judicial economy, "may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."

> ...in a case such as this in which several highly technical factual issues are presented an the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues. *Id.*

TWM also cites to *Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Communications Co.*, 402 F.Supp.2d 731 (E.D. Tex. 2005); *Logan v. Hormel Foods Corp.*, 2004 WL 5216126 (E. D. Tex. 2004); and *MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627 (E.D. Tex. 2009); and

In *Zoltar*, Zoltar Satellite Systems, Inc. ("Zoltar") filed suit against several companies in the U.S. District Court for the Northern District of California, San Jose Division, for infringing three patents. *Zoltar Satellite Systems, Inc.*, 402 F.Supp.2d at 733. The suit was filed in March 2001, and District Judge James Ware presided over the case. *Id.* In 2004, the case was tried to a jury which issued a finding of non-infringement on two of the three patents. *Id.* Judge Ware entered a judgement of non-infringement on the third patent but did not rule on certain counterclaims. *Id.*

In June 2005, while the California litigation was still pending before Judge Ware, Zoltar filed a second lawsuit against different companies in the U.S. District Court for the Eastern District of Texas for infringing the same three patents at issue in the California litigation. *Id.* at 734. The defendants moved to transfer venue of the case to the Northern

District of California because the California litigation involved the exact same technology

and three of the same patents. *Id.* The defendants also argued Judge Ware had invested

substantial time and resources becoming familiar with the technology at issue in the case.

*Id.* Zoltar opposed transfer arguing the Texas case involved different technology, patent

claims, parties, and products. *Id.*

District Judge J. Davis granted the motion to transfer. *Id.* at 739. He found that each

of the private factors favored transfer, the public interest factors were neutral, and judicial

economy favored transfer. *Id.* at 737. In considering judicial economy, Judge Davis cited

to *Eli Lilly* noting, "[I]n cases that involve a highly technical subject matter, such as patent

litigation, judicial economy may favor transfer to a court that is already familiar with the

issues involved in the case." *Id.* at 735. Judge Davis explained that Judge Ware had

reviewed tutorials on the technology at issue, conducted three claim construction

proceedings, issued three claim construction orders construing over twelve claim terms,

considered motions for summary judgment and motions in limine, conducted a three-week

jury trial in which he heard invalidity, infringement, and inequitable conduct arguments,

prepared a sixty-five page jury instruction, and considered motions for judgment nas a matter

of law. *Id.* Judge Davis also found that Zoltar was unable to identify any significant

differences between the technology or specific patent claims at issue in his case and that at

issue in the California litigation. *Id.* at 737. Lastly, Judge Davis noted that concerns about

judicial economy "especially deserve consideration when the same patent is simultaneously

being litigated in another district." *Id.*[10]

In *Logan*, Plaintiffs James P. Logan, Jr. and Logan Farms Inc. sued Defendants Hormel Foods Corporation and Wal-Mart Stores, Inc. for patent infringement in the U.S. District Court for the Eastern District of Texas. *Logan v. Hormel Foods Corp.*, 2004 WL 5216126 (E. D. Tex. 2004). Defendants filed a §1404(a) motion to transfer venue of the case to the docket of Judge Ewing Werlein in the Southern District of Texas where Judge Werlien had presided over a similar case Plaintiffs had brought against a different defendant alleging infringement of the same patent. *Logan*, 2004 WL 5216126 at *1. In April 2004, that case settled just prior to trial, after Judge Werlein had construed the claim terms. *Id.* at *2.

District Judge J. Davis granted the motion to transfer finding the convenience factors and judicial economy supported transfer. *Id.* at *4. Judge Davis held, "[I]n a case involving several highly technical factual issues, where overall the other relevant factors are neutral, judicial economy may favor transfer to a court that is already familiar with the issues." *Id.* at *2. Judge Davis also found that keeping the case in the Eastern District of Texas would also risk inconsistent claim construction. *Id.* at *3.

In *MHL Tek*, District Judge John Ward considered a §1404(a) motion to transfer venue of a patent infringement case from the Eastern District of Texas to the Eastern District of Michigan. *MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627 (E.D. Tex. 2009). At

---

[10] As discussed further below, this Court, unlike Judge Ware in the *Zoltar* case, has not conducted any claim construction proceedings, construed any claims, ruled on motions in limine, or presided over a jury trial. Furthermore, this Court received tutorials *after* this motion to transfer venue was filed.

27

the time, Judge Ward was also presiding over two other cases involving some of the same parties and the exact same patents. *MHL Tek,*, 2009 WL 440627 at *7. Judge Ward denied the motion because the convenience factors and judicial economy did not favor transfer. *Id.* at *8. Because many of the defendants were foreign, Judge Ward found that no single forum would have been more convenient for all parties. *Id.* at *4.

The Court finds the cases cited by TWM are distinguishable from this case and therefore not dispositive of the issue before this Court. First, *Eli Lilly* was an MDL case in which the court found the convenience factors were in equipoise. Not only is this case not an MDL case, but the *Gilbert* factors are certainly not evenly balanced. This Court has already found that two of *Gilbert* factors weigh heavily in favor of transfer and that the remaining *Gilbert* factors are neutral. None of the *Gilbert* factors weigh in favor of keeping this case in the Corpus Christi Division. Furthermore, the transferee court in *Eli Lilly* had been presiding over the same parties, the same patents, the same accused product, and the same dispute during the MDL phase of the suit. This case involves different parties, two new patents, and a different product.

In *Zoltar*, three of the four patents at issue were being litigated <u>simultaneously</u> in the proposed transferee forum where the presiding judge had construed multiple patent claims and presided over a jury trial. The patents at issue in this case are not currently being litigated in two different forums. In *Logan*, the court found <u>both</u> judicial economy and the convenience factors weighed heavily in favor of transfer. In this case, none of the convenience factors favors keeping this case in the Corpus Christi Division.

28

Unlike the court in *MHL Tek*, this Court is not currently presiding over any other cases involving the same patent. Also, *MHL Tek* involved many foreign defendants which made no single forum more convenient for all the parties. There are no foreign defendants in this case, and as explained above, this Court has found that transfer to San Antonio would be more convenient for all parties and witnesses.

The Court finds its experience with this lawsuit and the *AOL* litigation does not outweigh the *Gilbert* factors, which this Court has already found weigh heavily in favor of transferring this case to the San Antonio Division. The law governing transfers under §1404(a) has undergone significant change since this Court presided over the *AOL* case. In October 2008, the Fifth Circuit published its *en banc* decision in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008), further clarifying the burden imposed on a party moving to transfer under §1404(a). This Court presided over the *AOL* case from 2004 to 2007. Had the *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) decision been published at that time, this Court might have not heard any part of that case. While the Court acknowledges this is speculation, the AT&T Defendants should not have to defend this case in Corpus Christi <u>only</u> because a <u>different</u> defendant, who was accused of making a <u>different</u> infringing product and sued in a <u>different</u> case, did not then complain about venue. Such would not serve the interest of justice. Had this case been tried before the *AOL* case, TWM would have no ground to oppose transfer.

Furthermore, this case is still in the early stages of litigation, and it is in may ways different from the *AOL* litigation. A scheduling order has not yet been entered in this case.

Although this action was filed in April 2008, on January 22, 2009, after seeking leave of court to amend its complaint, TWM added two new patents to this lawsuit. On January 24, 2009, this Court denied AT&T Inc.'s motion for summary judgment that it cannot be liable for direct infringement based on agency law (D.E. 66). On February 27, 2009, the AT&T Defendants filed this motion to transfer venue. On March 25, 2009, the Court heard oral argument on the transfer motion. At that hearing, TWM suggested that the AT&T Defendants filed the transfer motion late, i.e., after this Court denied summary judgment, so they could have another judge consider the agency argument that was raised in that motion. While the Court acknowledges TWM's concern, discovery is still ongoing in this case, and this Court has not prohibited the AT&T Defendants from re-urging their motion to this Court after further discovery. This Court has not yet imposed a deadline for filing dispositive motions.

Aside from these events, this Court has had no meaningful discussion with the parties about the patents, underlying technology, or product at issue in this case. Furthermore, this case is in many ways different than the *AOL* case, which was settled one week into trial. This case involves different defendants, a different product, and two additional patents – the '153 and '686 Patents. On May 19, 2009, this Court received the parties' preliminary technology tutorials and joint claim construction and prehearing statement. It is uncontested that this case will involve new disputed claim elements. Specifically, there are 48 disputed claim elements, only nine of which were construed by this Court in the *AOL* litigation. The remaining 37 disputed claim elements were neither asserted by the parties nor construed by this Court in the *AOL* litigation.

The Court acknowledges that the parties may have to spend additional time and resources educating a new judge about this case. However, the Court is persuaded that any additional time would not be substantial. TWM over emphasizes the impact of this Court's having presided over the *AOL* litigation. The Court acknowledges it is somewhat familiar with three of the patents in this case; however, this Court held a *Markman* claim construction hearing in the *AOL* case in June 2006, three years ago. This Court will no doubt have to spend a substantial amount of time re-learning the patented technology at issue in that case. Moreover, this Court will also have to spend a substantial amount of time learning, for the first time, about the technology underlying the '153 and '686 Patents. There is still much work that remains to be done in this case. At this time, there are 48 disputed claim terms. This Court has not yet engaged in any claim construction activity, and a *Markman* claim construction hearing has not been scheduled. Because this case is in the early stages of litigation, the Court finds transfer will not compromise judicial economy.

## IV.   CONCLUSION

The Court finds the AT&T Defendants have clearly demonstrated that transferring this case to the San Antonio Division of the Western District of Texas is for the convenience of the parties and witnesses, in the interest of justice. The citizens of the San Antonio Division have a greater localized interest in hearing this case than the citizens of the Corpus Christi Division. The AT&T Defendants' U-verse business is based in San Antonio, and the factual circumstances of this case have no connection to the Corpus Christi Division whatsoever. There are no parties, evidence, or witnesses located within 100 miles of the Corpus Christi

31

Division, and trying this case in the San Antonio Division would be more convenient for both parties and all the witnesses. This Court's previous experience with applying three of the five patents at issue in this case to different audio streaming technology in a different case does not abrogate the reasonableness of transferring this case to the San Antonio Division. This case is in the early stages of litigation and is different from the *AOL* litigation.

The AT&T Defendants' motion to transfer is GRANTED (D.E. 152).

The Court TRANSFERS this case to the United States District Court for the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. §1404(a).

ORDERED June 8, 2009.


HAYDEN HEAD
CHIEF JUDGE