IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TWO-WAY MEDIA LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| AT&T INC.; AT&T CORP.; AT&T OPERATIONS, INC.; AT&T SERVICES, INC.; SBC INTERNET SERVICES, INC., D/B/A AT&T ENTERTAINMENT SERVICES, AT&T INTERNET SERVICES, AND PACIFIC BELL INTERNET SERVICES; AND SOUTHWESTERN BELL TELEPHONE COMPANY, | § § § § § § § § § § § § § | C.A. NO. 09:00476-OLG<br><br>JURY TRIAL DEMANDED |
| Defendants. | § | |

## TWO-WAY MEDIA LLC'S MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.   THE LEGAL STANDARD FOR LEAVE TO AMEND ...................................................... 1

II.  TWM SHOULD BE GRANTED LEAVE TO AMEND ...................................................... 3

    A.   The Requested Amendment is Narrow and Will Not Affect Other Deadlines .................. 3

    B.   TWM Has Been Diligent and the Delay Was Reasonable .................................................. 5

    C.   The Proposed Amendments Are Important ...................................................................... 10

    D.   AT&T Will Not Be Unfairly Prejudiced If the Court Grants TWM's Motion ................ 11

    E.   Even If AT&T Would Otherwise Be Unfairly Prejudiced, A Continuance Will Cure Any Such Prejudice .............................................................................................................. 12

III. CONCLUSION ............................................................................................................... 12

Plaintiff Two-Way Media LLC ("TWM") respectfully moves the Court pursuant to Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure for leave to file a Second Amended Complaint, a copy of which is attached as Exhibit A.  (A red-lined version showing the minimal changes is attached as Exhibit B.)  The sole amendment is the addition of a cause of action for inducing infringement.  This amendment is narrow in scope and does not change the nature of this lawsuit.  Nor will it affect any deadline or prejudice the AT&T Defendants ("AT&T").

## I.     THE LEGAL STANDARD FOR LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave when justice so requires."  *See* Fed. R. Civ. P. 15(a)(2).  The language of Rule 15(a) "evinces a bias in favor of granting leave to amend." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1983)).  Absent a "substantial reason," a court should not exercise its discretion to deny the party leave to amend.  *Id.*; *see also Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).  "In exercising its discretion [under Rule 15(a)] a court may consider undue delay, bad faith, dilatory motive, prejudice to the other party, and the futility of the proposed amendments." *Rolf*, 77 F.3d at 828.

After a scheduling order deadline for pleading amendments has passed, Rule 16(b) requires a movant to demonstrate "good cause" to extend the scheduling order to permit amendment.  *Lone Star OB/GYN Assocs. v. Aetna Health, Inc.*, 557 F.Supp.2d 789, 793 (W.D. Tex. 2008).  In the Fifth Circuit, courts consider four factors in deciding good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the

amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[1] *Id.*

The cases are legion in which courts have granted leave to amend complaints to introduce additional patent infringement claims under Rule 15(a) or Rule 16(b) standards. *See, e.g.*, *Tesco Corp. v. Weatherford Int'l, Inc.,* No. H-08-2531, 2009 WL 497134, at *1-2 (S.D. Tex. Feb. 26, 2009) (granting leave to amend complaint to add a new infringing product under Rule 15(a)) (Ex. E); *Osteotech, Inc. v. Regeneration Techs.*, Civ. No. 06-4249, 2008 WL 2036795 (D.N.J. May 9, 2008) (granting leave to amend complaint to add a claim for infringement of related patent under Rule 15(a)) (Ex. F); *SAP Aktiengesellschaft v. i2 Technologies, Inc.*, 250 F.R.D. 472, 475 (N.D. Cal. 2008) (granting leave to amend complaint to add a new patent under Rule 15(a) and pursuant to the good cause standard of the Local Patent Rules); *Berger v. Ohio Table Pad Co.,* 539 F. Supp. 2d 1069, 1092 (N.D. Ind. 2008) (granting leave to amend complaint to add a new patent under Rule 15(a)); *see also Arbitron, Inc. v. Int'l Demographics Inc.,* No. 2:06-CV-434, 2009 WL 166555 (E.D. Tex. Jan. 16, 2009) (granting leave to amend PICs under Rule 16(b) and pursuant to the good cause standard of the Local Patent Rules) (Ex. G); *Eaton*, 2008 WL 4601476, at *1-3 (granting leave to amend PICs under Rule 16(b) and pursuant to the good cause standard of the Local Patent Rules); *CooperVision, Inc. v. Ciba Vision Corp.*, 480 F. Supp. 2d 884, 888-90 (E.D. Tex. 2007) (granting leave to amend PICs pursuant to the good cause standard of the Local Patent Rules); *Garmin*, 2007 WL 2903843, at *7-8 (E.D. Tex. Oct. 3, 2007) (granting leave to amend PICs under Rule 16(b)).

---

[1] These are the same four factors a court considers when deciding whether "good cause" exists to supplement or amend preliminary infringement contentions ("PICs") that must be served under the local patent rules of the Eastern and Southern Districts of Texas. *See, e.g., Garmin Ltd. v. TomTom, Inc.*, No. 2:06-CV-338, 2007 WL 2903843, at *7 (E.D. Tex. Oct. 3, 2007) (attached as Ex. C); *accord MacLean-Fogg Co. v. Eaton Corp.*, No. 2:07-cv-472, 2008 WL 4601476, at *1 (E.D. Tex. Oct. 6, 2008) (attached as Ex. D). Accordingly, the Eastern and Southern District cases applying the good cause standard for PICs are instructive.

Before this case was transferred to this Court, Judge Head entered a first Scheduling Order that included a deadline of December 19, 2008 "to file amended pleadings (pre-claim construction)." (Docket No. 97 at item 6.) Judge Head granted leave for TWM to file its first Amended Complaint and requested that the parties submit a proposed new Scheduling Order. As Judge Head states in his transfer Order, the parties' proposed "scheduling order has not yet been entered." (Docket No. 190 at 29.)

Pursuant to this Court's request, the parties have spent the last several weeks negotiating a new proposed Scheduling Order that will be submitted shortly. The parties have agreed on all proposed dates, which are further discussed below. Additionally, the parties are in agreement to include a deadline of February 24, 2010 "for final infringement contentions and **to amend pleadings on infringement claims**." This motion is being filed over six months before the February 24, 2010 agreed deadline "to amend pleadings."

## II.   **TWM SHOULD BE GRANTED LEAVE TO AMEND**

Given the state of flux in this case's scheduling orders, TWM expects AT&T to argue that Rule 16(b) – instead of Rule 15(a) – is the appropriate standard. Regardless of which standard applies, the evidence discussed below shows that TWM should be permitted to amend.

### A.   **The Requested Amendment is Narrow and Will Not Affect Other Deadlines**

As a preliminary matter, it is important to note that TWM is not seeking to add new patents or even any new claims in the asserted patents. Nor is TWM seeking to add any new infringing products or any new parties. Instead, TWM is seeking a much narrower form of relief – adding a cause of action that various AT&T Defendants are "inducing" the direct infringement of which Defendants have been accused since day one.

In the patent world, there are two types of infringement: direct and indirect. Direct infringement arises, for example, when a defendant performs the steps of a method claim in a patent. 35 U.S.C. §271(a). Indirect infringement arises, for example, when a party "actively induces [direct] infringement." 35 U.S.C. §271(b). The live pleading asserts various theories of direct infringement against each AT&T Defendant, including theories of agency and joint infringement. Those theories all relate to AT&T's IPTV ("internet protocol television") product called U-verse. TWM's requested amendment changes none of the direct infringement theories that frame the contours of the case. Thus, little, if any, additional discovery by AT&T will be created by the amendment.

The crux of TWM's inducement theory is that one or more of the current Defendants have actively induced the direct infringement. (*See* paragraphs 29, 31, 36, 38-40 in Exhibit A.) It should come as no surprise to AT&T that TWM seeks to add inducement given AT&T's earlier summary judgment briefs that practically invite this cause of action. AT&T's previous summary judgment motion – which was denied – challenges TWM's agency theory of direct infringement, which is based on the principle that various AT&T Defendants direct and control the infringement of the AT&T subsidiaries that actually perform the infringing steps. In that context, AT&T stated: "'causing and directing' another entity to infringe is *precisely* the type of conduct Congress addressed in Section 271(b); *inducing infringement*." (Docket No. 83 at 3.)

AT&T therefore knew that TWM was likely to add an inducement cause once it developed further evidence regarding the degree of control that various AT&T entities exert over the direct infringement and the continuing nature of such control. In those same futile summary judgment briefs, AT&T further argued that an inducement cause includes the "additional requirements" of "actual or constructive knowledge of the patent" and "evidence of 'specific

intent' to induce infringement."  (Docket No. 83 at 2.)  As shown below, TWM has been diligent in developing evidence to establish the "knowledge" and "specific intent" components of inducement.  This evidence was not publicly available and could only be gleaned through time-consuming formal discovery.  TWM's diligent discovery efforts include: (1) taking depositions of 8 different AT&T representatives; (2) tendering five sets of production requests that have resulted in AT&T producing over 1.5 million pages of documents; and (3) propounding two sets of interrogatories.  (Payne Dec. at pars. 2-5 – Ex. H.)  Now that TWM has had time to digest the evidence it has diligently sought, it is in a position to assert a cause for inducing infringement under Section 271(b).

As further background, it is also important to understand that "this case is still in the early stages of litigation," according to Judge Head's transfer order.  (Docket No. 190 at 29.)  Under the parties' agreed dates, trial is over seventeen (17) months away, and the *Markman* hearing is approximately four (4) months away.  The close of fact and expert discovery is eight (8) months and twelve (12) months away, respectively.  It is clear, therefore, that no extensions will be required if the amendment is allowed.

### B.      TWM Has Been Diligent and the Delay Was Reasonable

The first factor under Rule 16 is "the explanation for the failure to timely move for leave to amend."[2]  The first three factors under Rule 15 (*i.e.*, undue delay, bad faith, and dilatory

---

[2]   While the movant's explanation must be considered, several Western District courts have granted leave where there was "no explanation" or the explanation was "not particularly persuasive."  *Lone Star*, 557 F.Supp.2d at 793; *Norton v. City of San Antonio*, No. SA-05-CV-1186, 2007 WL 628791, at *1 (W.D. Tex. Feb. 27, 2007).  Along the same lines, the movant's diligence in seeking amendment is not the sole or primary factor in determining whether good cause exists, and good cause can be shown even though the movant could have been more diligent.  *See, e.g.*, *Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2-06-CV-434, 2008 WL 4755761, at *1 (E.D. Tex. Oct. 29, 2008) (stating that the court "does not agree that diligence is the sole or primary factor to be considered in deciding" whether good cause has been shown) (attached as Ex. I); *Eaton*, 2008 WL 4601476, at *3 (good cause found although the patentee "could have been more diligent in pursuing its claims").

motive) overlap substantially with Rule 16's first factor.  All of these factors favor permitting the requested amendment.

TWM has diligently conducted discovery to prove up the "knowledge" and "specific intent" prongs of inducing infringement.  The knowledge component requires a showing of when the infringer had actual or constructive knowledge of the TWM patents.  With respect to specific intent, the "plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). Under this standard, specific intent can be found where the infringer has the authority to stop or alter the infringing activity, but does nothing to diminish or change such infringing activity, and in fact, takes affirmative steps to continue encouraging the activity.  *See, e.g., Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008) ("a failure to remove or diminish infringing features of a distributed product is relevant to a party's intent that those features be used for direct infringement" and "providing instruction on how to engage in an infringing use 'show[s] an affirmative intent that the product be used to infringe'"); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008) (finding inducement where the manufacturer "did not make changes to those [infringing] products or give its customers instructions regarding how to avoid infringement" after the lawsuit was filed); *AstraZeneca LP v. Apotex, Inc.*, No. 09-1518, 2009 WL 1372633, at *20-23 (D.N.J. May 14, 2009) (finding specific intent where a drug manufacturer did not try to find alternative, non-infringing language for its label) (Ex. J).

In line with the above cases, TWM has conducted discovery to confirm when the AT&T Defendants first knew about the TWM patents, and after such knowledge, whether certain AT&T Defendants had the authority to stop or alter the infringing activity but instead continued to

encourage it.  Only recently has the voluminous discovery in this case produced a clear picture of how certain AT&T entities continue to promulgate infringing technical standards that various AT&T subsidiaries are directed to follow in carrying out the infringing steps.  These AT&T entities continue to encourage the direct infringement despite their knowledge of the TWM patents.  This is a classic case of inducement.

AT&T first produced a small number of technical specifications for the U-Verse system on August 4, 2008, under the Southern District's Patent Rule 2-1(b), which permits a party claiming infringement to receive limited information regarding accused products before tendering "infringement contentions" detailing its theory of infringement.  AT&T's Rule 2-1(b) production did not contain any specifications of the U-Verse system issued *after the filing date of the lawsuit*, which is when AT&T claims it first had knowledge of the TWM patents.  (*See* AT&T answer to Int. no. 20 – Ex. K.)

Under the Southern District's Patent Rule 3-4, AT&T was required to make a further production last October of "documents and information sufficient to show the operation of any aspects or elements of an Accused Instrumentality."  Under the parties' agreement regarding production of electronically stored information, electronic documents in AT&T's production were required to be produced with "metadata" showing the "author, create date, and last edit date" of each such document.  Like the August 2008 production, the approximately twenty-five thousand pages of documents that AT&T produced in October and November 2008 under Rule 3-4 also included no technical specifications dated *after the filing of this lawsuit*.  The production did include one September 4, 2008 document styled "AT&T Project Lightspeed – Plan of Record NR 8.0" that spelled out responsibilities as between AT&T and third-party vendors for implementing various aspects of the U-Verse service according to previously issued technical

specifications.  (Ex. U, ATTTWM00049397).  But the Plan of Record did not spell out which particular AT&T entities would be implementing which aspects of U-Verse on the AT&T side with sufficient specificity to frame a theory of inducement as between the various AT&T entities themselves.  At that point last November, it was still impossible to determine whether the AT&T entities that were directing the infringement continued to induce the infringing activities *after having knowledge of the TWM patents*.

Since last November, AT&T has produced a staggering 1.5 million pages of documents (Ex. H at par. 5), the majority of which are highly complex technical documents that are extremely time-consuming to review and understand.  AT&T's productions include: (1) 315,087 pages on December 5, 2008; (2) 503,239 pages on January 5, 2009; (3) 206,091 pages on February 23, 2009; (4) 262,506 pages on April 3, 2009; and (5) 184,951 pages on June 19, 2009. (*Id.*)  As shown, AT&T has produced almost 1.2 million pages of documents since the original December 19, 2008 deadline for amendment of pleadings.  And the approximately three-hundred thousand pages it did produce shortly before the deadline were originally delivered in a form that could not be uploaded to TWM's electronic discovery vendor for viewing.  (JDolan E-mail 12/8/2008 @ 2:01 pm – Ex. N.)  TWM did not receive corrected document information until December 10, 2008, and was unable to upload the production for review until December 16, just three days before the amendment deadline.  Even so, the production included no technical specifications with electronic dates stamps after the filing date of the lawsuit.  In fact, most of the production had no electronic metadata at all.  The production as a whole had no apparent organization and was not accompanied by an index of any kind.  All of this prevented TWM from making more than a cursory review of the production before the amendment deadline.

TWM plowed through these and the equally undifferentiated and much larger volume of documents that AT&T produced after the previous deadline for amendment.  Unfortunately, it was unable to identify a coherent body of authoritative technical documents showing how various AT&T entities continued to promulgate infringing specifications even after they had knowledge of the TWM patents (*i.e.*, that would establish these entities had the knowledge and specific intent for inducement).  But it was apparent from the production that such a body of documents existed and AT&T just hadn't systematically produced it.  On March 4, 2009, TWM demanded that AT&T produce a complete, chronologically ordered set of these "baseline" documents.  (Crosby e-mail to Fulgham of 3/5/2009 – Ex. O.)  All along, TWM continued to take depositions throughout the spring in order to prove up its case.  (Ex. H at par. 2.)

Finally, on April 3, 2009, AT&T produced the requested technical documents in an organized form that allowed TWM to pin down that the infringing technical standards continue to be promulgated well after AT&T had knowledge of the TWM patents.  (*See, e.g.*, ATTTWM1223597 (June 19, 2008) (Ex. P); ATTTWM01221249 (June 18, 2008) (Ex. Q); ATTWM01226733 (December 4, 2008) (Ex. R); ATTTWM01227236 (December 17, 2008) (Ex. S); ATTTWM01252371 (February 18, 2009) (Ex. T)).  In other words, since AT&T gained knowledge of the TWM patents, the AT&T entities with authority to stop or alter the infringing activity have done nothing to diminish or change such infringing activity, and in fact, have taken affirmative steps to continue encouraging the infringing activity.  The April 3, 2009 production contained 262,506 pages, which took some time to review and understand.  After carefully reviewing those documents, TWM advised AT&T on July 29, 2009 that it would seek leave to add the inducement cause of action.

The above recitation of facts provides a more than adequate explanation for why TWM was not able to meet the original December 19, 2008 deadline for amending pleadings.  It also establishes that TWM has been diligent in conducting discovery regarding inducement and has not engaged in undue delay, bad faith, or dilatory motives.  *See Garmin*, 2007 WL 2903843, at *7 (court held that even though the patentee had received two source code modules *six months before* its PICs were due, it "did not unreasonably delay in moving to supplement the contentions that mention source code"); *Eaton*, 2008 WL 4601476, at *2 (court held that the patentee's delay in moving to supplement its PICs was reasonable, noting that the "delay resulted principally from requesting additional discovery rather than gamesmanship"); *CooperVision,* 480 F. Supp. at 888-89 (court held that a delay of over three months was reasonable because the patentee had been hampered by the accused infringer's rolling production).

### C.        The Proposed Amendments Are Important

The second factor under Rule 16 is the "importance of the amendment."  This factor overlaps substantially with the fifth factor under Rule 15 – "the futility of the proposed amendments."  These factors also militate in favor of permitting amendment.

The discussion in the previous section shows that TWM's inducement cause is far from "futile."  Instead, it is consistent with, and supported by, the case law.  Additionally, AT&T must concede that the inducement cause is important to TWM's case.  They essentially admit this in their failed summary judgment briefing: "'causing and directing' another entity to infringe is *precisely* the type of conduct Congress addressed in Section 271(b); *inducing infringement*." (Docket No. 83 at 3.)

Permitting TWM to add its cause for inducement is also important because it would promote judicial economy by allowing TWM to bring all of its causes in one lawsuit.  As the

courts have recognized, piecemeal litigation should be avoided where possible. *See Accuscan Inc. v. Xerox Corp.*, No. 96 Civ. 2579, 1998 WL 60991, at *1 n.1 (S.D.N.Y. Feb. 11, 1998) (finding that a proposed amendment seeking to add products in a patent case "will provide a comprehensive resolution of the controversy, avoid piecemeal litigation and result in efficient use of judicial and party resources") (Ex. L); *Landis Plastics, Inc. v. Polytainers Inc.*, 1992 WL 225558, at *3 (N.D. Ill. Sept. 4 1992) ("Judicial economy and the desire to avoid duplicative litigation dictates that . . . the revised designs be included and resolved along with the other issues in this lawsuit.") (Ex. M).

### D.    AT&T Will Not Be Unfairly Prejudiced If the Court Grants TWM's Motion

The next factor – "the potential prejudice in allowing the amendment" – also favors TWM.  As shown, the *Markman* hearing is approximately four (4) months away,[3] the close of discovery is twelve (12) months away, and trial is over seventeen (17) months away.  There is plenty of time, therefore, for AT&T to conduct any new discovery that it argues is necessary.  But, to be clear, very little, if any, new discovery by AT&T will be necessary because the nature of this lawsuit will not change if the amendment is allowed.  This cannot be disputed because the same direct infringement claims that now exist will not be modified by the amendment, and it is those claims that shape the scope of discovery for AT&T.

Additionally, the case law is clear that even if an accused infringer has to perform additional work due to new infringement theories, good cause still exists as long as the more significant deadlines (*e.g.*, close of discovery) and trial date are sufficiently far out.[4]  Not much

---

[3]     The amendment will not have any affect on *Markman* issues.  Nor will it have any affect on AT&T's invalidity contentions.

[4]     The *Garmin* court rejected the accused infringer's argument that the "supplemented contentions will force it to revisit prior discovery and conduct more prior art research."  *Garmin*, 2007 WL 2903843, at *8.  The court noted that the discovery deadline was four months away, the trial date was over a year away, and that the defendant had "ample time" to address the supplemental contentions.  *Id.*  Based on these findings and recognizing that a court

additional work will arise out of the new inducement cause, and in any event, there is ample time for AT&T to do any such alleged work.

       **E.**      **Even If AT&T Would Otherwise Be Unfairly Prejudiced, A Continuance Will Cure Any Such Prejudice**

The final factor under Rule 16 is the availability of a continuance to cure any prejudice when determining whether good cause exists.  *See, e.g.*, *Garmin*, 2007 WL 2903843, at *7; *Arbitron*, 2008 WL 4755761, at *1; *Eaton*, 2008 WL 4601476, at *1.  This factor also counsels in favor of granting TWM's motion because AT&T cannot possibly show any prejudice.

## III.   <u>CONCLUSION</u>

For the reasons stated above, TWM respectfully asks the Court to grant its motion for leave to file a Second Amended Complaint.  A proposed Order is attached.

DATED:  August 12, 2009.          Respectfully submitted,

                                       /s/ *Leslie V. Payne*

                                Parker C. Folse, III
                                Attorney –in-charge
                                Washington State Bar No. 24895
                                Southern District of Texas Bar No. 17936
                                SUSMAN GODFREY L.L.P.
                                1201 Third Avenue, Suite 3800
                                Seattle, Washington  98101
                                Telephone:     (206) 516-3880
                                Facsimile:     (206) 516-3883

                                Max L. Tribble, Jr.
                                Texas State Bar No. 20213950

---

"has broad discretion to allow scheduling order modifications," the court held that the plaintiff had shown "good cause" to supplement for all claims mentioning source code.  *Id.  See also Eaton*, 2008 WL 4601476, at *2 ("While it is likely that the amended PICs will impact Eaton's claim construction positions and invalidity contentions, Eaton is only minimally prejudiced because it still has ample time to prepare its case for both claim construction and trial," where the *Markman* hearing was nearly 10 months from the filing of the motion and trial was over a year away); *CooperVision*, 480 F. Supp. 2d at 889-90 (court rejected the accused infringer's argument that it would suffer prejudice "by having to backtrack and expand its prior art search" and by "hav[ing] to develop non-infringement positions," because the PIC supplementation was requested months before the claim construction hearing).

Southern District of Texas Bar No. 10429
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:     (713) 651-9366
Facsimile:      (713) 654-6666

Ian B. Crosby
Washington State Bar No. 28461
Southern District of Texas Bar No. 37868
Rachel S. Black
Southern District of Texas Bar No. 625295
Washington State Bar No. 32204
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington  98101
Telephone:     (206) 516-3880
Facsimile:      (206) 516-3883

Randolph P. Tower
Texas State Bar No. 20153000
George H. Spencer, Jr.
Texas State Bar No. 18921001
Jeffrey J. Jowers
Texas State Bar No. 24012932
CLEMENS & SPENCER
112 East Pecan Street, Suite 1300
San Antonio, Texas 78205
Telephone:     (210) 227-7121
Facsimile:      (210) 227-0732

ATTORNEYS FOR PLAINTIFF,
TWO-WAY MEDIA LLC

**OF COUNSEL:**

Michael F. Heim
Texas State Bar No.: 09380923
Southern District of Texas Bar No.: 8790
Leslie V. Payne
Texas State Bar No.: 00784736
Southern District of Texas Bar No.: 16995
Micah J. Howe
Texas State Bar No.: 24048555
Southern District of Texas Bar No.: 636023
HEIM, PAYNE & CHORUSH, L.L.P.

600 Travis St., Suite 6710
Houston, Texas  77002-2912
Telephone:      (713) 221-2000
Facsimile:      (713) 221-2021

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.3.

_____
/s/ *Leslie V. Payne.*
Leslie V. Payne

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Plaintiff has conferred with counsel for Defendants in a good faith effort to resolve the matters raised by this motion, and counsel cannot agree about the disposition of the motion.


_____/s/ *Leslie V. Payne*_____
Leslie V. Payne

## EXHIBITS

A.    Two Way Media, LLC's Second Amended Complaint

B.    Two Way Media, LLC's Second Amended Complaint (Redline)

C.    *Garmin Ltd. v. TomTom, Inc.*, No. 2:06-CV-338, 2007 WL 2903843 (E.D. Tex. Oct. 3, 2007)

D.    *MacLean-Fogg Co. v. Eaton Corp.*, No. 2:07-cv-472, 2008 WL 4601476 (E.D. Tex. Oct. 6, 2008)

E.    *Tesco Corp. v. Weatherford Int'l, Inc.,* No. H-08-2531, 2009 WL 497134 (S.D. Tex. Feb. 26, 2009)

F.    *Osteotech, Inc. v. Regeneration Techs.*, Civ. No. 06-4249, 2008 WL 2036795 (D.N.J. May 9, 2008)

G.    *Arbitron, Inc. v. Int'l Demographics Inc.,* No. 2:06-CV-434, 2009 WL 166555 (E.D. Tex. Jan. 16, 2009)

H.    Declaration of Leslie V. Payne in Support of Two-Way Media LLC'S Motion for Leave to File its Second Amended Complaint

I.    *Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2:06-CV-434, 2008 WL 4755761 (E.D. Tex. Oct. 29, 2008)

J.    *AstraZeneca LP v. Apotex, Inc.*, No. 09-1518, 2009 WL 1372633 (D.N.J. May 14, 2009)

K.    Defendants' Response to TWM's Second Set of Interrogatories

L.    *Accuscan Inc. v. Xerox Corp.*, No. 96 Civ. 2579, 1998 WL 60991 (S.D.N.Y. Feb. 11, 1998)

M.    *Landis Plastics, Inc. v. Polytainers Inc.*, 1992 WL 225558 (N.D. Ill. Sept. 4 1992)

N.    JDolan E-mail 12/8/2008 @ 2:01 pm

O.    Crosby e-mail to Fulgham of 3/5/2009

P.    ATTTWM1223597 (June 19, 2008) (Filed under Seal)

Q.    ATTTWM01221249 (June 18, 2008) (Filed under Seal)

R.    ATTWM01226733 (December 4, 2008) (Filed under Seal)

S.      ATTTWM01227236 (December 17, 2008) (Filed under Seal)

T.      ATTTWM01252371 (February 18, 2009) (Filed under Seal)

U.      ATTTWM00049397 (Filed under Seal)