IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TWO-WAY MEDIA LLC,<br><br>        Plaintiff,<br><br>v.<br><br>AT&T INC.; AT&T CORP.; AT&T OPERATIONS, INC.; AT&T SERVICES, INC.; SBC INTERNET SERVICES, INC., D/B/A AT&T ENTERTAINMENT SERVICES, AT&T INTERNET SERVICES, AND PACIFIC BELL INTERNET SERVICES; AND SOUTHWESTERN BELL TELEPHONE COMPANY,<br><br>        Defendants. | CIVIL ACTION<br>NO. 09-0476<br><br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiff Two-Way Media LLC ("TWM") brings this action against AT&T Inc. ("AT&T"); AT&T Corp.; AT&T Operations, Inc. ("AT&T Operations"); AT&T Services, Inc. ("AT&T Services"); SBC Internet Services, Inc., d/b/a AT&T Entertainment Services, AT&T Internet Services, and Pacific Bell Internet Services ("SBC Internet"); and Southwestern Bell Telephone Company ("Southwestern Bell"); (collectively, "Defendants") for patent infringement arising out of the Patent Laws of the United States, Title 35, United States Code.

### I. PARTIES

1. All facts herein are alleged on information and belief except those facts concerning TWM's own activities.

2. TWM is a Nevada corporation with its principal place of business at 2042 Alpine

Drive, Boulder, Colorado 80304. TWM is the owner of various patents relating to methods and systems for providing audio and visual information over a communication network.

3. AT&T is a Delaware corporation with its principal place of business at 175 E. Houston, San Antonio, Texas 78205-2233. AT&T may be served with this complaint through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

4. AT&T Corp. is a New York corporation with its principal place of business at One AT&T Way, Bedminster, New Jersey 07921. AT&T Corp. may be served with this complaint through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201. AT&T Corp. is a wholly owned subsidiary of AT&T.

5. AT&T Operations is a Delaware corporation with its principal place of business at 175 E. Houston, San Antonio, Texas 78205. AT&T Operations may be served with this complaint through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201. AT&T Operations was formerly known as SBC Operations, Inc. AT&T Operations is a wholly owned subsidiary of AT&T.

6. AT&T Services is a Delaware corporation with its principal place of business at 175 E. Houston, San Antonio, Texas 78205. AT&T Services may be served with this complaint through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201. AT&T Services was formerly known as SBC Services, Inc. AT&T Services is a wholly owned subsidiary of AT&T.

7. SBC Internet is a California corporation with its principal place of business at 2623 Camino Ramon, San Ramon, California 94583. SBC Internet may be served with this complaint through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201. SBC Internet is a wholly owned subsidiary of AT&T. SBC Internet does business under

at least the following assumed names:  AT&T Entertainment Services, AT&T Internet Services, and Pacific Bell Internet Services.

8.     Southwestern Bell is a Missouri corporation with its principal place of business at One AT&T Plaza, 208 S. Akard St., Dallas, Texas 75202.  Southwestern Bell may be served with this complaint through its registered agent, Timothy A. Whitley, 6500 West Loop South, Room 5.5, Bellaire, Texas 77401.  Southwestern Bell is a wholly owned subsidiary of AT&T.  Prior to June 2007, a limited partnership called Southwestern Bell Telephone, LP, provided infringing services.  In June 2007, Southwestern Bell Telephone, LP, merged into SWBT Inc.; SWBT Inc. was the surviving entity in the merger.  Through amendments to the articles of incorporation that took effect at or shortly after the time of the merger, SWBT Inc.'s name was changed to Southwestern Bell.  Southwestern Bell is legally responsible for any liabilities for patent infringement proven in this case based on the pre-merger conduct of Southwestern Bell Telephone, LP.  Southwestern Bell conducts business through the following assumed names, among others:  AT&T Texas, AT&T Kansas, AT&T Oklahoma, and AT&T Missouri.  It provides infringing services under those assumed names.

## II.     JURISDICTION AND VENUE

9.     This is an action for patent infringement under the Patent Act, 35 U.S.C. § 271.  This Court has subject matter jurisdiction by virtue of Section 1338(a) of Title 28, United States Code.  Venue in this Court is proper by virtue of Sections 1391(c) and 1400(b) of Title 28, United States Code.

10.    This Court has personal jurisdiction over AT&T and venue is proper, in part, because AT&T has a principal place of business in the state of Texas and AT&T, directly and/or in combination with AT&T subsidiaries and/or through its agents, does business in this district

3

by providing infringing services to residents of the Western District of Texas, by providing infringing services that it knew would be used within this district, and/or by participating in the solicitation of business from residents of this district.

11. This Court has personal jurisdiction over AT&T Corp. and venue is proper, in part, because AT&T Corp. has significant contacts with the state of Texas and AT&T Corp., directly and/or in combination with AT&T, other AT&T subsidiaries and/or through its agents, does business in this district by providing infringing services to residents of the Western District of Texas and/or by providing infringing services that it knew would be used within this district.

12. This Court has personal jurisdiction over AT&T Operations and venue is proper, in part, because AT&T Operations has a principal place of business in the state of Texas and AT&T Operations, directly and/or in combination with AT&T, other AT&T subsidiaries and/or through its agents, does business in this district by providing infringing services to residents of the Western District of Texas and/or by providing infringing services that it knew would be used within this district.

13. This Court has personal jurisdiction over AT&T Services and venue is proper, in part, because AT&T Services has a principal place of business in the state of Texas and AT&T Services, directly and/or in combination with AT&T, other AT&T subsidiaries and/or through its agents, does business in this district by providing infringing services to residents of the Western District of Texas and/or by providing infringing services that it knew would be used within this district.

14. This Court has personal jurisdiction over SBC Internet and venue is proper, in part, because SBC Internet has significant contacts with the state of Texas and SBC Internet, directly and/or in combination with AT&T, other AT&T subsidiaries and/or through its agents,

does business in this district by providing infringing services to residents of the Western District of Texas and/or by providing infringing services that it knew would be used within this district.

15.     This Court has personal jurisdiction over Southwestern Bell and venue is proper, in part, because Southwestern Bell has a principal place of business in the state of Texas and Southwestern Bell, directly and/or in combination with AT&T, other AT&T subsidiaries and/or through its agents, does business in this district by providing infringing services to residents of the Western District of Texas, by providing infringing services that it knew would be used within this district, and/or by participating in the solicitation of business from residents of this district.

**III.    BACKGROUND**

**A.    TWM and the TWM Patents**

16.     TWM's predecessor in interest, Netcast Communications Corp. ("Netcast"), was a pioneer of "live streaming" technology for broadcasting audio and video over the Internet. Live streaming allows users to receive audio and/or video information over the Internet at approximately the same time as that information is being transmitted, and without having to wait for the entire information to download. Netcast founder and TWM principal owner James Butterworth, along with Netcast Chief Technical Officer Antonio Monteiro, invented an interactive distributed server architecture that allows live audio and/or video streams to be sent to a large number of users in a reliable and efficient manner, while enabling commercial recordkeeping and marketing functions such as gathering verified usage statistics, dynamically inserting advertising content into streams, and offering targeted product sales, such as buying music CDs or concert tickets that relate to a song that a user is listening to.

17.     TWM owns many patents on audio and visual streaming technology based on the Netcast system. All of these patents share a common specification and claim priority to an

original application filed May 9, 1996.  On July 7, 1998, the United States Patent and Trademark Office issued this application to Netcast, the assignee of the inventors, as United States Patent No. 5,778,187 (the "'187 Patent"), titled "Multicasting Method and Apparatus."  A true and correct copy of the '187 Patent is attached as Exhibit A.  Continuations of the original application bearing the same title as the '187 Patent issued as U.S. Patent No. 5,983,005 (the "'005 Patent") on November 9, 1999; U.S. Patent No. 6,434,622 B1 (the "'622 Patent") on August 13, 2002; U.S. Patent No. 7,080,153 (the "'153 Patent") on July 18, 2006; and U.S. Patent No. 7,266,686 (the "'686 Patent") on September 4, 2007.  True and correct copies of each of the TWM continuation patents are attached as Exhibits B – E.  All of the patents listed above are collectively referred to in this Complaint as the "TWM Patents."  In 2002, Netcast conveyed the '187 Patent, the '005 Patent, the '622 Patent, and all divisions, renewals and continuations to these patents (including the '153 and '686 Patents) to Netcast Innovations Ltd., which later that year changed its name to Two-Way Media LLC.  Defendants have known about the TWM Patents since at least as early as April 11, 2008, when the Original Complaint was filed.

18.     The shared specification in the TWM Patents describes a system for transmitting, receiving, and monitoring audio and video streams over the Internet.  Before a user can receive audio or video over the Internet, analog transmission signals of audio or video must first be converted to digital signals.  This is because computers can only process data or signals that are digital, i.e., data that have been converted to a format consisting of zeros and ones.  In the TWM system, incoming analog and digital audio and/or video signals are received by a central facility, which converts the analog signals to digital signals that computers can understand.  This central facility then sends or forwards digitized audio and/or video signals to various computers, or servers, which then transmit the signals to users across the Internet or similar communications

networks. These servers monitor the reception of the signals by the users, and may also play a role in ensuring that each user receives the particular stream of the user's choosing and that the user receives the signals at substantially the same time as the signals are transmitted from the central facility.

19. The streams sent from the central facility may pass through selected intermediate computers/servers on their route to the user. The intermediate computers/servers direct the stream received from the central facility to the users who have requested that stream. An example of an embodiment of the TWM system from Figure 1 of the TWM Patents is shown below. As can be seen, the Media Servers 30 direct the content stream received from the Primary Servers 20 to the Users 40. The precise number and location of the intermediate servers can vary based on a variety of factors, such as population, number of subscribers, and level of network congestion. Among other benefits, using intermediate servers introduces scalability into the network, allowing the network to service greater numbers of users as demand increases.



20. While the user is receiving the selected content, one or more of the servers may monitor a user's reception of the selected stream and capture certain usage information. The

information captured may include, for example, the identity (or a proxy for the identity) of the user, the identity of the specific stream that the user requested, how long the user received that stream, the times at which the user received the stream, and the content of the stream. Additionally, server computers, whether at the central facility or at intermediate servers, may insert advertising or programming targeted to users into the streams that are sent to users. The content of the advertising and programming may be varied based on the identity of the user such that the advertising or programming may be targeted to different demographics or geography.

21.     TWM has previously asserted the '187, '005, '622, and '153 Patents against AOL LLC in the Southern District of Texas (C.A. No. C-04-089 and C.A. C-06-310). Those previous cases were assigned to Chief Judge Hayden Head. The parties settled these cases on September 12, 2007, when AOL agreed to take a non-exclusive license to the TWM Patents.

### B.     AT&T Entities and U-verse Infringement

22.     AT&T and its subsidiaries, collectively and through regional operating companies acting as agents, provide an Internet Protocol Television ("IPTV") service called U-verse in a large and expanding number of local markets throughout the United States, including this district. U-verse employs a technique called IP multicasting to duplicate and forward streams of audio and video to groups of users through a hierarchical network of distributed servers. All of the users in a group who have selected a stream receive it at approximately the same time, either through a fiber optic connection to their premises, or through a high-speed Digital Subscriber Line ("DSL") connection over copper wire. The U-verse distribution architecture is depicted in the figure below:



23. U-verse subscribers select streams from a user interface presented on their television screens by set-top boxes leased to them by an AT&T subsidiary such as Southwestern Bell. The user interface includes a channel guide that lists available streams, as well as side-bar information containing graphics and text relating to a selected channel. The U-verse user interface is depicted below:



24.     U-verse is a product of AT&T, which AT&T provides to consumers through the coordinated and combined participation of various subsidiaries acting on its behalf (*e.g.*, as its agents), and/or under AT&T instruction, direction, and/or control. In particular:

    a. AT&T has given board-level authorization to AT&T Services to enter into contracts with vendors to provide software, hardware, and design and support services for U-verse.

    b. AT&T Services has entered into a series of contracts with Microsoft Corporation to provide software for operating servers and client systems employed in delivering U-verse, along with related documentation and support.

    c. AT&T Services has entered into a series of contracts with Alcatel U.S.A. Marketing, Inc., ("Alcatel") to provide engineering, installation, configuration, provisioning, and management services, for physical infrastructure used to deliver U-verse.

   d. Pursuant to its contract with AT&T Services, and in cooperation with project teams consisting of employees assigned from multiple AT&T subsidiaries, Alcatel has produced documentation that specifies how the elements of U-verse are to be deployed, configured, and operated.

   e. AT&T Services, SBC Internet Services, and AT&T's regional telephone company subsidiaries identified in paragraph 26, below, own, operate, maintain, and control the elements used to provide U-verse.

   f. AT&T Services, SBC Internet Services, and AT&T's regional telephone company subsidiaries identified in paragraph 26, are required to operate the elements used to provide U-verse in the manner specified in the documentation provided by Alcatel.

  25. U-verse service is a uniform, standardized product offered under the national "AT&T" brand in each market where it is available, with the following exceptions:

   a. Some programming content varies among regional markets;

   b. Different versions of client software may be used in some set-top boxes;

   c. Set-top box hardware may be provided by different manufacturers.

  26. Directly or indirectly, AT&T owns "wireline" local exchange subsidiaries that provide primarily landline telecommunications and video services to residential customers in 22 states and to business and governmental customers throughout the U.S. To date, the U-verse service has been made available to consumers in specific cities within the following states by the following local exchange subsidiaries owned, directly or indirectly, by AT&T: Southwestern Bell (Texas, Kansas, Missouri, and Oklahoma); Pacific Bell Telephone Company, d/b/a AT&T California (California); The Southern New England Telephone Company, d/b/a AT&T

11

Connecticut (Connecticut); Indiana Bell Telephone Company, d/b/a AT&T Indiana (Indiana); Michigan Bell Telephone Company, d/b/a AT&T Michigan (Michigan); The Ohio Bell Telephone Company, d/b/a AT&T Ohio (Ohio); BellSouth Telecommunications, Inc., d/b/a AT&T Georgia (Georgia); and Illinois Bell Telephone Company, d/b/a AT&T Illinois (Illinois); Nevada Bell Telephone Company, d/b/a AT&T Nevada (Nevada); Wisconsin Bell, Inc., d/b/a AT&T Wisconsin (Wisconsin).

27.     AT&T anticipates that the U-verse service will be offered to consumers in other communities in the states identified in the preceding paragraph. Within this district, the U-verse service is currently available to consumers in at least San Antonio and Austin, and Southwestern Bell offers the service to consumers in other Texas cities as well. AT&T further anticipates that the U-verse service will be offered by all of its local exchange subsidiaries in all 22 of the states that they serve.

28.     Acting through one or more of its officers and/or its board of directors, AT&T approved and authorized the development and deployment of the U-verse service as an AT&T-branded product. AT&T further directed and controlled the development, deployment, marketing, and deployment of the U-verse service. AT&T's goal has been, and continues to be, to make the U-verse service available to consumers throughout the geographic areas served by its wireline local exchange subsidiaries. Those subsidiaries and other Defendants have acted as AT&T's agents in providing the infringing U-verse service.

29.     Acting through one or more of its officers and/or its board of directors, AT&T: (a) approved and authorized the development by designated AT&T subsidiaries of the technology and infrastructure necessary to offer the U-verse service to the consuming public; (b) approved and authorized the capital expenditures by its subsidiaries necessary to provide the U-

12

verse service to consumers; and (c) authorized and directed its wireline local exchange subsidiaries, including those identified in ¶ 26 above, to provide the U-verse service under the AT&T brand to consumers in their operating areas. AT&T further directed and controlled the activities of its subsidiaries described in subparagraphs (a) through (c) of this paragraph. In doing so, AT&T actively induced the infringement of its subsidiaries.

30. AT&T markets the U-verse service to subscribers of each of its regional operating subsidiaries, including subscribers of Defendant Southwestern Bell in the Western District of Texas, and actively solicits their business, through AT&T's web site, att.com. Domain names corresponding to each of AT&T's regional operating subsidiaries are registered to AT&T itself and redirect to att.com. The "About us" page at att.com identifies AT&T itself, though the site is registered to AT&T subsidiary Defendant AT&T Corp.

31. AT&T either formulated or approved plans that assigned functions to be performed by its direct and indirect subsidiaries in the development, marketing and deployment of the U-verse service. In doing so, AT&T actively induced the infringement of its subsidiaries. Some of these functions and the subsidiaries that perform them are described in ¶¶ 32 – 37 below.

32. As noted above, a number of the wireline local exchange carriers (including Defendant Southwestern Bell) already provide the U-verse service to residential customers within some of their local service areas, and AT&T plans for all of these subsidiaries eventually to offer U-verse within their service areas. In doing so, each wireline local exchange subsidiary (including Defendant Southwestern Bell), either individually or jointly with other AT&T affiliated companies, makes, uses, sells or offers for sale some or all of the claimed elements of one or more of the TWM Patents.

13

33. AT&T Corp. operates a national IP network that carries streams of audio and video from national programming sources collected at a central facility, known as a super hub office (SHO), to regionally distributed intermediate facilities, known as video hub offices (VHOs), which forward streams through one or more additional geographically distributed hub offices to subscribers served by the wireline local exchange carriers, including subscribers of Southwestern Bell in the Western District of Texas. In doing so, AT&T Corp. has acted with the authorization of AT&T and/or under its control and direction, and, either individually or jointly with other AT&T affiliated companies, makes, uses, sells or offers for sale some or all of the claimed elements of one or more of the TWM patents.

34. AT&T Operations and AT&T Services have been involved in the design, testing, and implementation of the U-verse service. AT&T Operations and/or AT&T Services provides overall management and coordination of the elements of the network used to deliver AT&T's U-verse services, and of the AT&T subsidiaries that own and operate those elements. Acting with the authorization of AT&T and/or under its control and direction, AT&T Operations and/or AT&T Services exercises direction and control over the actions of other AT&T subsidiaries in providing the AT&T U-verse service. In doing so, AT&T Operations and AT&T Services, either individually or jointly with other AT&T affiliated companies, make, use, sell or offer for sale some or all of the claimed elements of one or more of the TWM patents.

35. SBC Internet obtains content for the U-verse service and participates in the coordination of the other AT&T subsidiaries involved in providing elements of the service, including programming and provision of the service to customers in the Western District of Texas. SBC Internet also provides standards and equipment requirements/specs, as well as network services, for the U-verse service. In doing so, SBC Internet has acted with the

authorization of AT&T and/or under its control and direction, and, either individually or jointly with other AT&T affiliated companies, makes, uses, sells or offers for sale some or all of the claimed elements of one or more of the TWM patents.

36. In performing functions related to the operation of the U-verse service, Southwestern Bell, the other wireline local exchange carriers identified in ¶ 26 above, AT&T Corp., AT&T Operations, AT&T Services, and SBC Internet have made, used, sold and offered for sale the claimed elements of one or more of the TWM Patents.  Through concerted and coordinated activities integral to the provision of the U-verse service, these AT&T subsidiaries have either individually or jointly and in combination infringed one or more of the TWM Patents and have actively induced the infringement.  The fact that the activities that constitute infringement of the TWM Patents may be divided among or performed by multiple corporate entities in light of the corporate structure through which AT&T has chosen to conduct business does not insulate them or AT&T from liability for infringement.

37. AT&T has caused and directed its subsidiaries to engage in activities, including those activities described in ¶¶ 22 – 36 above, that have resulted in the infringement of one or more TWM Patents.  In performing the activities that either individually or in combination have infringed the TWM Patents, AT&T's subsidiaries have acted as agents of AT&T and their infringing activities have been within the course and scope of their agency.

### IV.   CAUSES OF ACTION

#### Patent Infringement – AT&T Companies

38. TWM re-alleges and incorporates by reference each of the preceding paragraphs of this Complaint, including ¶¶ 22 – 37 above.  Direct or indirect subsidiaries of AT&T, acting as agents or sub-agents of AT&T, have, without authority, consent, right or license, and in direct

15

infringement of the '187 Patent, the '005 Patent, the '622 Patent, the '153 Patent, and the '686 Patent, made, used, offered for sale and/or sold the methods and systems claimed in the TWM Patents in this country. This conduct constitutes infringement under 35 U.S.C.A. § 271(a). AT&T, as principal, is liable for the infringing activities of its agents and sub-agents. As an inducer of these infringing activities, AT&T is also liable for the infringement under 35 U.S.C.A. § 271(b).

39. Direct or indirect subsidiaries of AT&T have individually or jointly infringed the '187 Patent, the '005 Patent, the '622 Patent, the '153 Patent, and the '686 Patent, by individually or jointly making, using, offering for sale and/or selling the methods and systems claimed in the TWM Patents in this country. This conduct constitutes infringement under 35 U.S.C.A. § 271(a). Even if no one AT&T subsidiary has performed each and every element of the claims in the TWM Patents, the combination of actions performed by AT&T subsidiaries constitutes infringement of each and every element of one or more of the TWM Patents. Plaintiff believes that the AT&T subsidiaries identified in this Complaint are the corporate entities that performed these actions, but other or different subsidiaries may have been involved in performing them. AT&T has controlled or directed the performance of those actions by its subsidiaries and thereby has caused them to perform the activities that either individually or in combination constitute infringement of one or more of the claims in the TWM Patents. Accordingly, AT&T is liable for the infringing activities of those subsidiaries under the doctrine of joint or divided infringement, or, as a principal, under the law of agency. As an inducer of these infringing activities, AT&T is also liable for the infringement under 35 U.S.C.A. § 271(b).

40. In the alternative or in addition to AT&T, one or more of the other AT&T companies named as Defendants in this Complaint (including those referenced in ¶¶ 41- 44

16

below) has controlled or directed and actively induced the performance of the individually or jointly infringing activities of direct or indirect subsidiaries of AT&T, in addition to performing actions that in themselves correspond to one or more elements of one or more claims in the TWM Patents, and thereby has caused those subsidiaries to perform the activities that individually or in combination constitute infringement of one or more of the claims in the TWM Patents. Accordingly, such other AT&T companies are liable for the infringing activities of those subsidiaries under the doctrine of joint or divided infringement, or, as a principal, under the law of agency. Additionally, as inducers of these infringing activities, such other AT&T companies are also liable for the infringement under 35 U.S.C.A. § 271(b).

41. AT&T Corp. has, individually or in combination with and/or through the actions of other AT&T subsidiaries, without authority, consent, right or license, and in direct infringement of the '187 Patent, the '005 Patent, the '622 Patent, the '153 Patent, and the '686 Patent, made, used, offered for sale and/or sold the methods and systems claimed in the TWM Patents in this country. This conduct constitutes infringement under 35 U.S.C.A. § 271(a).

42. AT&T Operations and AT&T Services have, individually or in combination with and/or through the actions of other AT&T subsidiaries, without authority, consent, right or license, and in direct infringement of the '187 Patent, the '005 Patent, the '622 Patent, the '153 Patent, and the '686 Patent, made, used, offered for sale and/or sold the methods and systems claimed in the TWM Patents in this country. This conduct constitutes infringement under 35 U.S.C.A. § 271(a).

43. SBC Internet has, individually or in combination with and/or through the actions of other AT&T subsidiaries, without authority, consent, right or license, and in direct infringement of the '187 Patent, the '005 Patent, the '622 Patent, the '153 Patent, and the '686

Patent, made, used, offered for sale and/or sold the methods and systems claimed in the TWM Patents in this country. This conduct constitutes infringement under 35 U.S.C.A. § 271(a).

44. Southwestern Bell has, individually or in combination with and/or through the actions of other AT&T subsidiaries, without authority, consent, right or license, and in direct infringement of the '187 Patent, the '005 Patent, the '622 Patent, the '153 Patent, and the '686 Patent, made, used, offered for sale and/or sold the methods and systems claimed in the TWM Patents in this country. This conduct constitutes infringement under 35 U.S.C.A. § 271(a).

45. As a result of Defendants' infringement, TWM has been damaged, and will continue to be damaged, until Defendants are enjoined from further acts of infringement.

46. TWM faces real, substantial, and irreparable damage and injury of a continuing nature from Defendants' infringement for which TWM has no adequate remedy at law.

## V.   JURY DEMAND

47. TWM demands a trial by jury on all issues triable by a jury.

WHEREFORE, TWM prays:

(a) That this Court find Defendants have committed acts of patent infringement under the Patent Act, 35 U.S.C. § 271;

(b) That this Court enter judgment that:

   (i) TWM is the owner of the TWM Patents and all rights of recovery under the TWM Patents; and

   (ii) the TWM Patents are valid and enforceable;

(c) That this Court issue an injunction enjoining the Defendants, their officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, from continuing the acts herein complained of, and more particularly, that the Defendants

and such other persons be permanently enjoined and restrained from further infringing the TWM Patents; TWM reserves the right to request relief in the alternative to an injunction, including the award of a reasonable royalty to be paid by Defendants for any infringing activity that continues past the date of final judgment;

  (d) That this Court require Defendants to file with this Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which they have complied with the injunction;

  (e) That this Court award TWM the damages to which it is entitled due to Defendants' patent infringement, both before and after issuance of the TWM Patents, with both pre-judgment and post-judgment interest;

  (f) That this Court award TWM its costs and disbursements in this civil action, including reasonable attorney's fees; and

  (i) That this Court grant TWM such other and further relief, in law or in equity, both general and special, to which it may be entitled.

           Respectfully submitted,

             /s/ Leslie V. Payne

           Parker C. Folse, III
           Washington State Bar No.: 24895
           SUSMAN GODFREY L.L.P.
           1201 Third Avenue, Suite 3800
           Seattle, Washington  98101-3000
           Telephone: (206) 516-3880
           Facsimile: (206) 516-3883

           Max L. Tribble, Jr.
           Texas State Bar No.: 20213950
           SUSMAN GODFREY L.L.P.
           1000 Louisiana Street, Suite 5100
           Houston, Texas  77002-5096

Telephone:     (713) 651-9366
Facsimile:     (713) 654-6666

Ian B. Crosby
Washington State Bar No.: 28461
Rachel S. Black
Washington State Bar No.: 32204
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington  98101-3000
Telephone:     (206) 516-3880
Facsimile:     (206) 516-3883


Randolf P. Tower
Texas State Bar No.: 20153000
George H. Spencer, Jr.
Texas State Bar No.: 18921001
Jeff Jowers
Texas State Bar No.: 24012932
Clemens & Spencer
1300 Weston Centre
112 East Pecan
 San Antonio, Texas 78205
Telephone: (210) 227-7121
Facsimile: (210) 227-0732

ATTORNEYS FOR PLAINTIFF,
TWO-WAY MEDIA LLC

**OF COUNSEL:**

Michael F. Heim
Texas State Bar No.: 09380923
Leslie V. Payne
Texas State Bar No.: 00784736
Micah J. Howe
Texas State Bar No.: 24048555
HEIM, PAYNE & CHORUSH, L.L.P.
600 Travis Street, Suite 6710
Houston, Texas  77002-2912
Telephone:     (713) 221-2010
Facsimile:     (713) 221-2021